JOSEPH A. STAFFORD, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, March 10, 1937.

*Rann, Vaughan, Brown & Sturtevant* [*John E. Leach* of counsel; *Raymond C. Vaughan,* with him on the brief], for the appellant.

*Lopacki & Lennon* [*Glenn A. Stockwell* of counsel], for the respondent.

CUNNINGHAM, J. The plaintiff-respondent was attempting to pass over the crossing at grade of the defendant-appellant's railroad on Hyde Park boulevard. His automobile, which he was driving, was struck by the engine of a west-bound freight train of defendant. The jury returned a verdict in plaintiff's favor for damages for the personal injuries he received in the accident and this appeal is taken from the judgment entered thereon.

The plaintiff entered Hyde Park boulevard from the north and proceeded southerly. Five tracks cross this highway, all running in an easterly and westerly direction. From north to south, the tracks are, first two of the International High Speed Line, next a single track of the Erie railroad located forty-one feet south of the southerly line of the two International tracks, and the last two the west- and east-bound tracks of the defendant. It is sixty-nine feet from the southerly rail of the Erie track to the northerly rail of defendant's northerly track. The northerly track of defend-

ant's railroad at this point is the west-bound track and the southerly is the east-bound track. Further to the south and located in the center of Buffalo avenue, there are two street car tracks. A city highway traffic signal is located in about the center of the intersection of Hyde Park boulevard and Buffalo avenue, regulating east- and west-bound vehicular traffic in Buffalo avenue and north- and south-bound vehicular traffic in Hyde Park boulevard. The distance from the northerly rail of defendant's railroad to this traffic signal is about seventy-four feet. There are railroad flashing signals on each side of Hyde Park boulevard north of the International High Speed tracks; there are also railroad flashing signals on each side of Hyde Park boulevard south of the southerly rail of defendant's railroad. The flash signals are set in pairs, each one of each pair having two red bulls-eye lenses, one facing south and one facing north. When a train approaches, each of a pair flashes alternately, first one, then the other, lighting up all four lenses as the train approaches. It is like swinging a light back and forth.

The plaintiff crossed the International High Speed tracks and the Erie track and stopped in the sixty-nine-foot space between the Erie track and the northerly track of the defendant; he does not know just where. The stop was made because an east-bound train was passing on the southerly track of the defendant. As soon as that train cleared the crossing, he started up; he says that the city traffic sign in Buffalo avenue was green and he accepted that as an invitation to go ahead. The train which struck him was approaching from the east on the northerly track of the defendant's railroad so that the view thereof was not obstructed by the passing east-bound train.

There was evidence to support a finding by the jury that the whistle was not blown and the bell was not ringing upon the west-bound engine a sufficient length of time, before the engine reached the crossing, to adequately warn the plaintiff of the approach of the train.

The plaintiff was familiar with the crossing and knew that it was protected both on the north and on the south by flashing signals installed by the defendant. The plaintiff, who was thirty-two years of age at the time of the accident, testified that, as the train cleared the crossing, he looked in both directions before he started his car and saw nothing; the east-bound train had just gone and then he looked in the direction of the city traffic light; that was green; he does not say that he looked thereafter and does not remember anything further. For a distance of twenty-one feet north of the defendant's northerly rail there was a space

in which his view was unobstructed and he could see for more than one-third of a mile down the tracks to the east. There were a number of cars waiting for the east-bound train to pass and the plaintiff was at the head of the line. When he moved towards the tracks, he was proceeding in low gear about seven miles an hour; he cannot tell how many feet he moved before he was hit; he was asked if either one of the flasher signals, south of the defendant's tracks, was flashing; he answered, " Not that I saw." Then he was asked, " Well, you looked south, didn't you? A. I did. Q. And that was in the direction of these signals? A. It is to a certain extent. Q. Were they lit and flashing, or not? A. No, they were not."

The plaintiff's witness Hart, who was riding in the rear seat of the plaintiff's automobile, said that he did not remember looking before they started up; the last thing he remembers is standing still on the crossing; he thinks he did not see the flashing signals on the south side of the crossing, flashing; he thinks he did not look to see; he does not know whether they were or not; he did not see the city traffic signal on Buffalo avenue.

The plaintiff's witness Miller, who was behind the plaintiff and was the operator of the third car in line while they were waiting for the east-bound train to pass, said that he did not notice as to whether the flashers were on or not and did not notice the street traffic light.

The plaintiff's witness Ball was the operator of a street car which was standing on Buffalo avenue just east of Hyde Park boulevard; he testified that the flash signals were working before the accident, that they were working before the east-bound train reached the crossing and that they continued to flash until the collision. He first saw the flashers working when the east-bound train went by and they kept up until the smash.

The engineer of the train involved in the collision testified that when he was 500 or 600 feet from the crossing, he saw four or five cars standing between the Erie track and the track on which his train was running; only one car moved and that started when he was just coming onto the crossing; that automobile was seven or eight feet from the track when it started to move.

The defendant's witness Rougeux was in an automobile that he was operating; he was standing still at the time of the accident, facing in a northwesterly direction; he did not notice the flashing signal on the southerly side of the railroad because a street car obstructed his view; he is positive that the flashing signal on the northwesterly side of the crossing was flashing.

The defendant's witness Ashby runs a store on the northwest corner of Hyde Park boulevard and Buffalo avenue; he heard the crash of the accident but he did not see it; he observed that a short time after the accident the signals were working O. K.

The defendant's witness Fairburn was a passenger on the standing street car; the flashing signal on the southeast corner of Hyde Park boulevard and Buffalo avenue was directly in front of his eyes; it was flashing.

The defendant's witness Himmert was rear brakeman on the train involved in the collision; a passenger train passed over the crossing five or ten minutes after the accident and he walked over to see if the signals were working; he says that the flash signals on the south side of the crossing worked all right.

The defendant's witness Ellis was a brakeman on the train that struck the plaintiff's automobile; he saw an east-bound passenger train going over the crossing six or seven minutes after the accident; he watched the signals on the south side of the tracks at this time and they were working.

Certainly if the jury found that the railroad flashers were not flashing continuously from the time the plaintiff started his car, up to the time of the accident, such finding is contrary to and against the weight of the evidence. There is no credible evidence to support such finding. Under the circumstances, he was guilty of contributory negligence, and the finding of the jury that he was not guilty of contributory negligence is contrary to and against the weight of the evidence.

For these reasons the judgment and order appealed from snould be reversed upon the law and the facts, with costs, and the complaint dismissed, with costs.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment and order denying motion for a new trial reversed on the law and facts, with costs, and complaint dismissed, with costs.